*Edwards & Angell, Walter A. Edwards, Robert E. Jacobson,* for complainants.

*Hinckley, Allen, Tillinghast & Wheeler, Arthur M. Allen, Matthew W. Goring, Robert F. Pickard, Hogan & Hogan, Edward T. Hogan, Laurence J. Hogan,* for certain respondents.

*Sheffield & Harvey, William R. Harvey, J. Russell Haire,* for guardian *ad litem* and representative of contingent interests.

LOUIS DI BIASE *vs.* JOHN LOUIS NARDOLILLO.

SAME *vs.* LUIGI NARDOLILLO.

AUGUST 18, 1949.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   These two actions of trespass on the case for negligence were tried together before a justice of the superior court sitting with a jury which returned a separate verdict against each defendant in the sum of $14,500.  Each case is here on defendant's bill of exceptions which are identical and consist of exceptions taken to certain rulings on evidence made during the trial, to the refusal of the trial justice to direct a verdict, and to his denial of the motion for a new trial.

The first action was brought against the operator of an automobile which struck and injured the plaintiff on Cranston street in the city of Cranston in this state on April 4, 1947.  The second action was brought against the owner of said automobile, who is the father of the other defendant. The son, being a minor, was represented by a guardian *ad litem,* who submitted the interest of his ward to the care and protection of the court.   A plea of the general issue was also filed in his behalf.

Defendant Luigi Nardolillo, the father, filed a plea of the general issue and also a special plea alleging that the automobile which injured the plaintiff was not being operated by and under the control of a person for whose conduct he was legally responsible and that the operator of the vehicle was not his agent and servant at the time of the accident. However, the issues of agency and consent are not involved here, as the record shows an agreement between counsel that the automobile which struck plaintiff was owned by the defendant Luigi Nardolillo and was being operated by his son, the other defendant, with his permission and consent.  Since the issues and the evidence are the same in both cases, we shall hereinafter treat the operator as the

sole defendant, our decision, however, applying with equal force to both cases.

Plaintiff's testimony was to the effect that he lived on America street in Cranston; that early in the morning of April 4, 1947 he had gone to a store on Cranston street near the corner of America street to order a chicken; that about five o'clock in the afternoon he returned to get the chicken, found it was not ready and then went to a cafe next door where he played two games of cards and drank two half glasses of beer "to kill time." After leaving the cafe he returned to the chicken store and finding that his order was not ready he left telling the attendant that he would call for it the next morning.

Plaintiff testified that he then started for home and had to cross Cranston street from the westerly to the easterly side; that he started from near the chicken store toward 1672 Cranston street on the opposite side. Cranston street at this point near the corner of America street is 39.5 feet in width and runs generally north and south. Before stepping into the street he looked both left and right, saw no car approaching and started to walk straight across. When he was about half way across he looked again and saw a car coming toward him from his right. This car was then near a store with a Coca-Cola sign, which the evidence showed was about 253 feet south from where the plaintiff claimed the accident happened. Believing he had plenty of time, he proceeded to cross and was struck and knocked down when he had reached a point a "couple of steps before the sidewalk." He also testified that when he started across Cranston street there was no car parked in front of 1672 Cranston street, but there was one parked near an electric light pole, which the evidence showed was about 38 feet northerly from the corner of America street; and that there were no cars parked on Cranston street between the pole and America street.

The plaintiff's testimony that he was crossing Cranston street from the direction of the chicken store, *i.e.*, from west

to east, was corroborated by inference by Anthony D'Elia, a twelve year old boy, who observed a man crossing at that point as he was walking along Cranston street on the way to his home on Connecticut street, the next street north of America street. Just as he passed this man he heard a crash, ran back and saw a man lying in the street. Although he did not know the plaintiff, he testified that there was only one man crossing Cranston street at the place of the accident. He further testified that there was no automobile parked on Cranston street near the corner of America street, but there was one near the pole further north; that the automobile which struck the plaintiff did not stop until it reached the corner of Connecticut street a short distance north from the above-mentioned pole.

That the accident happened near the corner of America street, as claimed by the plaintiff, is further supported by the testimony of Vincent Venditto, a motor vehicle inspector employed by the state of Rhode Island. He investigated the accident shortly after its occurrence and found loose dirt and glass from a broken headlight on the easterly side of Cranston street starting at a point about eight feet north of the northeast corner of America and Cranston streets. The glass was close to the curb of Cranston street. Captain Louis B. Fouchecourt of the Cranston police testified that the broken glass was "about in front" of 1672 Cranston street; that the defendant first placed the scene of the accident as in front of 1672 Cranston street, but later placed it at a point further north directly in front of an electric light pole.

The defendant testified that he was driving north on Cranston street; that as he approached the corner of America street he was traveling at a speed of 15 to 18 miles per hour; that he slowed down as he reached the corner and accelerated his speed slightly as he passed and saw no pedestrians on Cranston street at that time; that as he was passing a parked car on the right a man suddenly appeared in front of his car; that he applied his brakes and swerved

148

sharply to the left to avoid hitting him; that there were two cars parked on Cranston street, the nearest one being about eighteen feet from the corner of America street; that when he stopped his car, about four feet from the scene of the accident, and went back to look at the man who had been struck he found him lying about four feet behind his car, about three feet out from the two parked cars with his head toward the rear car and his feet about even with the rear of the front car.

We will now consider defendant's exceptions to the evidence. Exception numbered 3 is to a question asked Dr. Alphonse R. Cardi and the answer thereto, as follows: "Q. Did you make any other physical observations as to this man's condition—his physical condition? A. Yes. I noted that there was no alcoholic odor on his breath." The objection was not made nor was the exception taken until after the question had been answered and there was no motion made to strike out such answer. Furthermore, the answer was responsive to the question asked. This exception is overruled.

Exception 4 involves an opinion expressed by Dr. Cardi on the basis of certain facts not then appearing in testimony. The court permitted an answer to the question on the assurance of counsel that such evidence would later be presented and after the court's statement that the doctor's answer would be stricken from the record if such evidence were not presented. This evidence was later supplied. The trial justice was evidently attempting to accommodate the doctor so that he would not have to be recalled. The allowance of this question at that time was within the sound discretion of the court and the defendant was not prejudiced thereby. This exception is overruled.

Exceptions 7, 8 and 9 relate to the introduction of certain mortality or life expectancy tables prepared by "Commercial Standard Ordinary Mortality Company" and known as C. S. O. tables. The witness Oliver L. Thompson, Jr., though not an actuary, testified that he was manager of

the Providence office of Home Life Insurance Company of New York, that he was familiar with the mortality tables, and that the C. S. O. tables were the ones used by all life insurance companies. This witness testified, by reference to such tables, that the life expectancy of a male person of plaintiff's age, *viz.*, fifty-eight years, was 15.77 years. Since the declaration alleged that the plaintiff suffered injuries which will incapacitate him in the future and entail future suffering and expense, and since there is evidence that plaintiff's incapacity is of a permanent nature, we are of the opinion that the tables showing the expectancy of life were properly admitted. *Woodward* v. *Wilbur*, 54 R. I. 60. This exception to the admission of such evidence is overruled.

Exception 19 is to the ruling of the court allowing the following question and answer thereto by Vincent Venditto: "Q. Let me ask you this; assuming that an automobile hits a pedestrian on the street and that glass is found at a certain point, could it be possible that the accident happened further ahead from where that glass was found? * * * A. Well, the glass would be found about where the intersection was." Assuming this question was otherwise proper, this ruling was clearly erroneous as the witness had not been shown to have any special qualifications as a physicist. The purpose of the question apparently was to secure an expression of opinion as to where the accident could have happened with relation to the glass that was found in the highway. However, in view of the fact that the same witness had previously testified as of his own observation, shortly after the accident, that this glass and loose dirt was found about eight feet north of the northeast corner of America street and there was other evidence for the plaintiff that the glass was found at about that point in the highway, and further in the absence of any evidence from the defendant that the glass was found near the electric light pole referred to above, the challenged question and answer constituted harmless error in the circumstances. This exception is overruled.

150

We have examined all of the defendant's other exceptions relating to the admission of evidence and we find the rulings complained of either correct or not prejudicial. All such exceptions are overruled.

Defendant's exception to the denial of his motion for a directed verdict is without merit. The evidence was decidedly conflicting, the plaintiff's testimony being that he was crossing Cranston street from west to east, while the defendant's evidence indicated by inference that he was attempting to cross from east to west and stepped suddenly from between two parked cars directly into the path of defendant's car. In passing upon such a motion the trial justice is not concerned with the weight of the evidence or the credibility of the witnesses. The evidence must be construed most favorably to the plaintiff and all reasonable inferences must be drawn in his favor. *Cardall* v. *Shartenberg's, Inc.*, 69 R. I. 97; *Milliken* v. *Weybosset Pure Food Market*, 71 R. I. 312. This exception is overruled.

The last exception is to the denial of his motion for a new trial. This motion was based on the usual grounds. Although the verdict rendered is very substantial, we are of the opinion that it cannot be considered grossly excessive.

The medical testimony shows that the plaintiff sustained fractures of the fifth, sixth, seventh, eighth and tenth ribs in front and the sixth, seventh, eighth and ninth ribs behind, on the left side of his body; he received comminuted fractures of the tibia and fibula of his right leg at a point approximately one third of the distance from his knee to his ankle, and multiple contusions and abrasions of his extremities; he was a patient at Saint Joseph's Hospital from April 4 to May 24, 1947 during which time he suffered considerable pain; he was operated on three times while at the hospital, one operation requiring drilling a hole through the heel bone and inserting a heavy steel pin so that traction could be applied to the leg in an attempt to bring the bones into a normal position. Because there was evidence that gangrene was setting in, a low thigh amputation was per-

formed on April 26, 1947 and the right leg was removed at a point about four or five inches above the knee joint. Another operation was performed on May 3, 1947 for the purpose of closing and suturing the skin flaps over the stump, which had been left open so as to avoid a further gangrenous condition. Although plaintiff was wearing an artificial limb, he was also using crutches which Dr. William V. Hindle stated he might have to use the rest of his life. The plaintiff was a laborer and at the time of the trial was unable to do any kind of work as the stump was still painful. It is clear that so far as the work of a laborer is concerned, the plaintiff will be permanently handicapped.

In denying defendant's motion for a new trial the trial justice said: "the Court feels that the jury weighed the facts properly; brought in a proper verdict; estimated the damages fairly, in every way, and that their verdict does substantial justice between the parties." It thus appears that in expressing his approval of the jury's verdict he exercised his independent judgment on the evidence. In such circumstances his decision will not be disturbed unless it is clearly wrong. We have carefully read the transcript and we cannot say that on the conflicting evidence the decision of the trial justice denying a new trial is clearly wrong. Defendant's exception to such denial is therefore overruled.

All of the defendant's exceptions in each case are over-ruled, and each case is remitted to the superior court for entry of judgment on the verdict.

*Monti & Monti, Michael A. Monti, Francis A. Monti,* for plaintiff.

*Robert T. Flynn,* for defendants.